**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

**SHIVAL NILESH VYAS,**

        **Plaintiff,**

**v.**                                            3:25-cv-00261

**KRISTI NOEM, in her official capacity as
Secretary of the U.S. Department of Homeland Security;
TODD LYONS, in his official capacity as Acting Director
of U.S. Customs and Immigration Enforcement; and
PAMELA BONDI, in her official capacity as Attorney General
of the United States,**

        **Defendants.**

## COMPLAINT

West Virginia colleges and universities are home to some of the best and brightest students our nation has to offer. The present case concerns one such student: Mr. Shival Vyas. Shival, a graduate student at Marshall University, was positioned to graduate with a master's degree in data science in early May of this year. However, just a month before his graduation, he was informed that he was one of hundreds of students nationwide whose Student and Exchange Visitor System [hereinafter "SEVIS"] records were terminated, leaving his legal status, his education, and the future he worked to build for himself in peril. The actions of the Defendants have no basis in law, are divorced from fact, and represent an unlawful overreach by the government that is both immoral and unconstitutional.

## JURISDICTION AND VENUE

1.     Jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 1346, and 5 U.S.C. § 702.

2.      Venue is proper in the Southern District of West Virginia pursuant to 28 U.S.C. § 1391(e), as this is a civil action in which Defendants are employees or officers of the United States, and the Plaintiff resides in the Southern District of West Virginia.

3.      This Court is authorized to grant the requested relief under 5 U.S.C. § 706, 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1651, and the Court's equitable powers.

## PARTIES

4.      Plaintiff Shival Vyas is a twenty-eight-year-old graduate student at Marshall University in Huntington, West Virginia. Prior to the acts of the Defendants, described herein, Plaintiff Vyas was studying and working in West Virginia pursuant to the F-1 Student Program.

5.      Defendant Kristi Noem is the Secretary of the Department of Homeland Security [hereinafter "DHS"]. She is sued in her official capacity.

6.      Defendant Todd Lyons is the Acting Director of the Immigration and Customs Enforcement [hereinafter "ICE"], a component of DHS. He is sued in his official capacity.

7.      Defendant Pam Bondi is the Attorney General of the United States. She is sued in her official capacity.

## STATEMENT OF FACTS

### *Mr. Shival Vyas' Path to an Education in the United States*

8.      Shival Vyas is a citizen of India who, prior to applying to colleges, made regular trips to the United States to visit family in Seattle. These visits, with entry permitted pursuant to a B-2 visa, inspired Shival to apply to American colleges and universities.

9.      In 2014, Shival applied for and received an F-1 visa and F-1 nonimmigrant status to attend college in the United States. Shival received those authorizations and began attending

Purdue University, where he graduated with a Bachelor's of Science in Electrical and Computer Engineering Technology.

10.     By all measures, Shival performed well in school. When he graduated from Purdue University in 2018, he had a 3.7 grade point average, was an undergraduate teaching assistant, had engaged in multiple substantive engineering projects, and had earned the respect of professors and peers on campus. While his academic pursuits didn't leave him much time, he still found time to engage with the university community, participating in Latin and ballroom dance.

11.     Following the completion of his undergraduate degree, Mr. Vyas began pursuing a graduate degree in engineering at Purdue University. Mr. Vyas was accepted into the Purdue University master's program, a program that fully funded his education at that institution and permitted him to teach two classes to Purdue undergraduates.

12.     While this program was incredibly fulfilling for Mr. Vyas, he – along with the rest of the world – was impacted by the Covid-19 pandemic. The impact of quarantine orders, social isolation, and disruptions to his academic programs, all while being thousands of miles from his home and support system made the transition difficult.

13.     In June 2020, Mr. Vyas made the misjudgment of driving to a friend's house with a blood alcohol content just above the legal driving limit. Mr. Vyas acknowledged his mistake and pled to Operating While Intoxicated ("OWI") a Misdemeanor A in Cass County, Indiana with a term of three hundred sixty days probation.

14.     Mr. Vyas' probation began in September 2020 and was terminated in January 2021 as the result of his good behavior and compliance, based on the recommendation of his probation officer.

15.    Shortly thereafter, given the increasing impacts of the Covid-19 pandemic, Mr. Vyas decided to return to India to be nearer to family. In February 2021, Mr. Vyas withdrew from his course of study at Purdue University, ending his F-1 eligibility, and returned to India. During his time in India, Mr. Vyas worked in the field of computer science and engineering as an artificial intelligence and firmware engineer, an engineering lead, and a senior AI and embedded firmware consultant.

16.    While working in India, Mr. Vyas decided to further his education to improve his job prospects. While his Purdue engineering degree had prepared him for the workforce, having a degree in data science would present more opportunities. Given his successful undergraduate career, Mr. Vyas had many schools to choose from. Ultimately, he chose to attend Marshall University because the work of its professors spoke most closely to what he wanted to do.

17.    In June of 2023, Mr. Vyas applied for an F-1 visa and F-1 nonimmigrant student status, given that his earlier authorization had lapsed after he withdrew from his program of study. As part of that application, Mr. Vyas fully disclosed all relevant information concerning his prior misdemeanor.

18.    Because of Mr. Vyas' past OWI, he was instructed to submit to an immigration medical examination to be performed by a panel physician appointed by the Department of State.

19.    Mr. Vyas completed the requested panel physician examination on July 1, 2023, and submitted his passport five (5) working days following his test date. After requesting, and receiving, the final medical report, Mr. Vyas' application was approved and his visa was issued.

20.    In August 2023, following the issuance of his visa, Mr. Vyas travelled to the United States and began his master's program in data science at Marshall University in

Huntington, West Virginia. Shival Vyas is expected to complete his program and graduate on May 10, 2025.

21.    In preparation for his graduation, Mr. Vyas had already submitted an application for Optional Practical Training [hereinafter "OPT"] which would permit him to work in the United States on a temporary basis in employment related to his field of study. If Mr. Vyas did not apply for OPT, he would be required to leave the United States within a 60-day grace period at the conclusion of his educational program pursuant to 8 C.F.R. § 214.2(f)(5)(iv). If approved for OPT, he would be permitted to work in a related field for 12 months, with the option to extend that period by an additional 24 months because of his STEM degree.

22.    Mr. Vyas was set to graduate in the coming weeks. In a time when students are meant to focus on their final exams, celebrate their accomplishments, and search for exciting work opportunities, Shival received a fateful email that created chaos in his life and education. Dated April 8, 2025, from the U.S. Consulate General in Mumbai, that email read:

> We are writing about an important and serious matter in reference to your nonimmigrant student (F-1) visa.
>
> On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 16-Jul-28 was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act, as amended.
>
> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome

As soon as you depart the United States, you must personally present your passport to the U.S. embassy or consulate which issued your visa so your visa can be physically cancelled.

You must not attempt to use your visa as it has been revoked. If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

23.    Immediately upon receiving this email, Shival contacted the designated school official [hereinafter "DSO"], an employee of the university who is tasked with interfacing with international students as part of Marshall's International Student Services program. The designated school official informed Shival that his SEVIS record was not yet terminated.

24.    The following day, April 9, 2025, Marshall University informed Shival that his SEVIS record was terminated in an email that read:

I am reaching out regarding your immigration record. As you are aware, you have received notice that your visa was revoked by the Mumbai Consulate. Marshall University has been closely monitoring SEVIS to stay ahead of any developments, and I regret to inform you that your record was marked as terminated yesterday for the following reason: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.

I understand that this news is incredibly distressing, and I want to assure you that we are here to support you through this process. At this time, I want to make sure you are fully aware of the next steps and your available options.

Please note that all employment authorization, on- or off-campus ends immediately when you fall out of valid status, and that unauthorized employment can further damage your status, so please cease any employment immediately.

You are now out of status and may be subject to immigration enforcement and deportation if you do not promptly depart the US.

Your SEVIS termination does not impact your academic standing at Marshall University. However, your ability to stay enrolled or attend in-person classes may be affected and you may be subject to further immigration enforcement actions by federal authorities. Given the seriousness of this situation, I strongly urge you to consult a qualified immigration attorney regarding your situation. Marshall University cannot provide legal guidance on these matters and you should consult a qualified immigration attorney if you have any questions.

I know this is overwhelming, and while my ability to provide legal guidance is limited in these circumstances, please know that we are here to

support you. If you have received any notifications from the U.S. government, embassy, or consulate, I would greatly appreciate it if you could share them with me.

25.     As a result of these actions, Mr. Vyas has not been permitted to attend in-person classes, a heavy burden to bear as he attempts to finish his final semester of his graduate program. He also has not been able to apply for employment though OPT, which will leave him unemployed after graduation, at great personal and financial loss.

***Relationship Between F-1 Student Visas, Nonimmigrant Status, and SEVIS Records***

26.   When an international student is accepted into an approved educational program, they must apply for admission into the United States. For many students, including Mr. Vyas, this means seeking admission through the F-1 student program.

27.     The F-1 student program is administered by the Department of Homeland Security's Student and Exchange Visitor Program [hereinafter "SEVP"]. SEVP maintains SEVIS, a database which documents the status of students whose presence is legally authorized pursuant to an educational visa.

28.     While SEVIS documents the legal status of an international student, senior government officials have repeatedly represented to federal courts that the termination of a SEVIS record does not inherently terminate an individual's nonimmigrant status. In a sworn affidavit provided by a senior official within the National Security Division for Homeland Security Investigations represented to a Federal Court in the Eastern District of Michigan that:

> [t]erminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record … Furthermore, the authority to issue or revoke visas for nonimmigrant students lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation.

7

29.    Pursuant to these representations by DHS officials, it would be possible for an international student to have a terminated SEVIS record, but an active F-1 nonimmigrant student status.

30.    In addition to the requirements placed on students, federal regulations establish recording and recordkeeping obligations on each SEVP-certified school. 8 C.F.R. § 214.3(g). Many of these obligations placed on schools affirmatively require that they update a student's SEVIS record. For example,

- Schools must use SEVIS to issue a Form I-20 pursuant to 8 C.F.R. § 214.2(f)(iii);

- Schools must use SEVIS to authorize an F-1 student to drop below a full course of study pursuant to 8 C.F.R. § 214.2(f)(6)(iii);

- Schools must use SEVIS to grant a program extension pursuant to 8 C.F.R. § 214.2(f)(7)(iv);

- Schools must use SEVIS to facilitate the transfer of a student between schools pursuant to 8 C.F.R. § 214.2(f)(8);

- Schools must use SEVIS to permit a student to engage in off-campus employment as the result of hardship pursuant to 8 C.F.R. § 214.2(f)(9)(ii)(d);

- Schools must use SEVIS to permit a student to engage in curricular practical training pursuant to 8 C.F.R.  § 214.2(f)(10);

- Schools must use SEVIS to apply for a 24-month extension of OPT for individuals with a STEM degree pursuant to 8 C.F.R. § 214.2(f)(10)(ii)(c)(2)(iii);

- Schools must use SEVIS to update a student's address within 21 days of being informed that the student has moved pursuant to 8 C.F.R. § 214.2(f)(17).

For each of these routine actions, access to SEVIS is not optional, it is the only mechanism by which those actions may be initiated.

31.    At the time he was informed that his SEVIS record had been terminated, Mr. Vyas was preparing for his graduation. That preparation included submitting his application for OPT, a program to which he is entitled to apply and that would permit him to remain in the country for up to three additional years to work in a job related to his field of study.

32.    OPT represents a significant opportunity for Mr. Vyas; it would significantly increase his earning potential, as average salaries for engineers in the United States are exponentially higher than the salaries of similar roles in India.

33.    If the representations made by DHS officials are accurate and students whose SEVIS records have been terminated have retained their F-1 status, then that termination has restricted students, including Mr. Vyas, from enjoying the full benefits of his legal F-1 status.

34.    The actions of the Defendants also pose risk to educational institutions, including Marshall University. Federal regulations acknowledge the precarious circumstance that schools may find themselves in should they fail to adequately balance their obligations both to their international students as well as to the federal government. *See* 8 C.F.R. § 214.4 (Schools are obligated to their students to provide the programs of study to which they have committed themselves in the students' application for enrollment and acceptance process. Schools are obligated to the U.S. government to comply with the recordkeeping, retention, reporting and other requirements contained in 8 C.F.R. § 214.3.")

35.    Were Mr. Vyas to move or otherwise engage in an action that triggers a mandatory reporting requirement on the part of Marshall, the university would find itself in a paradox. The

university would be obligated to make a report through SEVIS for a student with legal F-1 status, but unable to do so as the SEVIS account for the student has been terminated.

36.    Similarly, if termination of a SEVIS account does not communicate the end of legal F-1 status, then a University with an enrolled F-1 student who has a terminated SEVIS account would not have a mechanism by which they would be able to report the termination of attendance of each nonimmigrant student as required by 8 U.S.C. § 1101(a)(15)(F)(i). The penalty for failure to report termination of status can be harsh – the withdrawal of SEVP certification and, consequently, the ability to host international students.

37.    If the representations by the Defendants are accurate and students who have had SEVIS records terminated retain their legal F-1 status, then a great injustice has been done to the students who are not able to receive the full benefit of that legal status, to the universities that now bear substantial legal risk, and the relationships which existed between students and their universities which have now been unduly restricted by government action.

38.    For Mr. Vyas, the consequences are clear. If he has retained his F-1 status, he has been unable to attend his courses in the final weeks of his graduate program. He has been unable to pursue OPT, losing potential earnings and long-term career benefits as a result.

### *A Termination of Plaintiff's F-1 Status is Unlawful*

39.    Should the Defendants allege that Mr. Vyas' F-1 status has been terminated, such an act would be blatantly and unquestionably unlawful. SEVP regulations distinguish between two ways that a student may fall out of status: (1) a student who "fails to maintain status;" and (2) an agency-initiated "termination of status." *See* 8 C.F.R. § 214.2(f).

40.    Students fail to maintain their F-1 student status when they do not comply with the regulatory requirements of F-1 status, such as failing to maintain a full course of study

without prior approval, engaging in unauthorized employment, or other violations of the requirements under 8 C.F.R. § 214.2(f). In addition, 8 C.F.R. § 214.1(e)-(g) outlines specific circumstances where certain conduct by any nonimmigrant visa holder, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year "constitute a failure to maintain status."

41.     The only information that Mr. Vyas received about the supposed termination of his status was the report from Marshall University that his SEVIS record indicated that the termination was classified as "OTHER – Individual identified in criminal records check and/or has had their VISA revoked."

42.     Having been identified in a criminal record check is not a lawful ground for termination pursuant to 8 C.F.R. § 214.1(e)-(g). Mr. Vyas was not convicted of a crime of violence, nor was he convicted of a crime for which the potential sentence is more than one year, meaning that he categorically is not subject to termination of his F-1 status on those grounds. Further, Mr. Vyas' only interaction with the criminal justice system occurred before he arrived in the United States on his current visa and pursuant to his current legal status.

43.     Similarly, revocation of a visa is not a failure to maintain status. DHS's own policy guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record." U.S. Immigration and Customs Enforcement, Policy Guidance 1004-04 – Visa Revocations (June 7, 2010). Rather, if the visa is revoked, the student is permitted to continue their course of study in school, and it is only upon departure from the United States that their SEVIS record is terminated. After that occurs, the student would need to obtain a new visa from a consulate or embassy abroad if they wish to re-enter the United States. *See* U.S.

Department of State, Guidance Directive 2016-03, 9 FAM 403.11-3: VISA REVOCATION (Sept. 12, 2016).

44.     Mr. Vyas has complied with all laws and regulations concerning his visa and his immigration status since its issuance. He has not failed to maintain status within the plain meaning of the law and therefore is not subject to termination of his F-1 status pursuant to 8 C.F.R. § 214.2(f).

45.     Agency-initiated termination is even more limited. Pursuant to 8 C.F.R. § 214.1(d), DHS can terminate F-1 student status only when: (1) a previously granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. These grounds are plainly inapplicable to the case at hand.

### *Defendants' Disregard for Widespread Harm*

46.     While the purposes and intent behind Defendants' actions may be beyond the scope of consideration of this Court, and their basis so specious as to defy credibility, the impact is clear. Across the United States, talented and promising international students are having their dreams torn asunder, mere inches from the finish line. These students have traveled far, studied hard, and paid significant tuition into the United States economy, whilst enriching the scholarship and culture of our academic institutions, only to be denied the credentials they worked so hard to achieve, for capricious and arbitrary reasons.

47.     The unlawful terminations are part of a clear policy and pattern/practice, whether written or not, perpetuated by Defendants to cancel the status of hundreds, if not thousands, of

immigrant students nationwide, or, in the alternative, sow such chaos and confusion that F-1 students with otherwise legal status believe that they are required to self-deport.

48.    On April 7, 2025, Inside Higher Ed, an industry publication, had already reported 147 terminations at 48 different educational institutions and indicated that this estimate was "almost certainly a fraction of the total" because "[m]any . . . colleges are reluctant to publicly confirm any student visa revocations [because they are] anxious to avoid attracting federal scrutiny and uncertain how to navigate an increasingly fraught gray zone." Liam Knox, Student Visa Dragnet Reaches Small Colleges, Inside Higher Ed (Apr. 8, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/08/trump-admin-broadens-scope-student-visa (accessed Apr. 18, 2025). Mass cancellations have also been documented in numerous news sources.

49.    The timing and uniformity of these terminations leave little question that DHS has adopted a nationwide policy, whether written or not, of mass termination of student status in SEVIS. While the exact details of the policy are not currently known, the experience of Plaintiff and of other publicly reported cases strongly suggests that the terminations are being indiscriminately made based upon any information that a given student has had some kind of encounter with a law enforcement official, no matter how innocuous, or a prior encounter with immigration agents even if that encounter did not involve unlawful conduct.

50.    These unlawful cancellations have also been the subject of lawsuits in federal district courts across the nation, and Temporary Restraining Orders have been issued in many such cases.

**COUNT 1**
**Violation of Fifth Amendment – Procedural Due Process**
*SEVIS Termination*

51.     The foregoing allegations are realleged and incorporated herein.

52.     The United States Constitution requires notice and a meaningful opportunity to be heard before being deprived of rights and interests that can be withdrawn only for cause by law. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003) (due process entitles noncitizens to "notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

53.     The law, namely 8 C.F.R. § 214.1(d), provides the specific bases upon which an immigrant student's F-1 status can be terminated by DHS.

54.     Through termination of Plaintiff's SEVIS record, Defendants unlawfully deprived him of the ability to benefit from his legal entitlement to his F-1 status.

55.     Defendants terminated the Plaintiff's SEVIS record without (i) notifying him of the termination decision and the reasons for it, (ii) providing him an individualized hearing before an impartial adjudicator, and (iii) providing him with adverse evidence and an opportunity to confront and respond to such evidence.

56.     Plaintiff has suffered, and continues to suffer, ongoing harm as a result of this deprivation.

57.     Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.

**COUNT 2**
**Violation of Fifth Amendment – Procedural Due Process**
*F-1 Student Status Termination*

58.     The foregoing allegations are realleged and incorporated herein.

59.     If the Defendants' position is that SEVIS account deletion is not equivalent to an F-1 Student Status termination, Defendants must be estopped from continued deletion of Plaintiff's SEVIS account, as the SEVIS record is the sole means for schools to determine legal student status. In the alternative, if Defendants allege that Plaintiff's F-1 Student Status has been terminated, this termination was capricious and improper. The reasons given were not "new," as claimed in the email notice; Mr. Vyas was fully and properly vetted for legal status as a student.

60.     The United States Constitution requires notice and a meaningful opportunity to be heard before being deprived of rights and interests that can be withdrawn only for cause by law. *See Scorteanu v. I.N.S.*, 339 F.3d 407, 413 (6th Cir. 2003) (due process entitles noncitizens to "notice that is reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").

61.     The law, namely 8 C.F.R. § 214.1(d), provides the specific bases upon which an immigrant student's F-1 status can be terminated by DHS.

62.     Defendants terminated the Plaintiff's F-1 status without (i) notifying him of the termination decision and the reasons for it, (ii) providing him an individualized hearing before an impartial adjudicator, and (iii) providing him with adverse evidence and an opportunity to confront and respond to such evidence.

63.     Plaintiff has suffered, and continues to suffer, ongoing harm as a result of this deprivation.

64.    Defendants' disregard for complying with the well-established due process principles violated Plaintiffs' due process rights.

## COUNT 3
### Violation of Administrative Procedure Act
*(Unlawful Terminations of Plaintiff's F-1 Student Statuses)*

65.    The foregoing allegations are realleged and incorporated herein.

66.    Defendants' termination of Plaintiff's F-1 student status is a final agency action. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

67. Defendants' termination of Plaintiff's F-1 student status violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the Accardi doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy,* 347 U.S. 260 (1954).

68.    Under 8 C.F.R. § 214.1(d), Defendants have no statutory or regulatory authority to terminate Plaintiff's F-1 student status based on the justifications provided. Nothing in Plaintiffs' criminal history, academic record, or other applicable history or record provides a statutory or regulatory basis for termination or a determination that Plaintiff has failed to maintain his F-1 status.

69.    Additionally, in making its determination that each Plaintiff's student status should be terminated, Defendants did not consider any facts relevant to Plaintiff's individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its

determination. As a result, Defendants arbitrarily and capriciously terminated Plaintiff's F-1 student status.

70.     Moreover, Defendants terminated Plaintiff's F-1 student status without affording them meaningful notice and an opportunity to be heard, contrary to Plaintiffs' constitutional right to procedural due process.

71.     Therefore, Defendants' termination of Plaintiff's F-1 student status is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C.A. § 706(2). It is also not in accordance with DHS's own rules.

**COUNT 4**
**Violation of Administrative Procedure Act**
*(Unlawful Terminations of Plaintiff's SEVIS Status)*

72.     The foregoing allegations are realleged and incorporated herein.

73.     Defendants' termination of Plaintiff's SEVIS status deprives him of the ability to meaningfully benefit from his F-1 student status, and is therefore a final agency action. Defendants' termination of Plaintiff's F-1 student status is a final agency action. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019) ("The order terminating these students' F-1 visas marked the consummation of the agency's decisionmaking process, and is therefore a final order[.]").

74. Defendants' termination of Plaintiff's SEVIS status violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, in excess of statutory jurisdiction, and in violation of the Accardi doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy,* 347 U.S. 260 (1954).

75.     Defendants have no statutory or regulatory authority to terminate SEVIS status based on the justifications provided. Nothing in Plaintiff's criminal history, academic record, or other applicable history or record provides a statutory or regulatory basis for termination or a determination that Plaintiff has failed to maintain his F-1 status.

76.     In making its determination that Plaintiff's SEVIS status should be terminated, Defendants did not consider any facts relevant to Plaintiff's individual circumstances nor did it provide any explanation, let alone reasoned explanation, justifying its determination. As a result, Defendants arbitrarily and capriciously terminated Plaintiff's SEVIS status.

77.     Moreover, Defendants terminated Plaintiff's SEVIS status without affording them meaningful notice and an opportunity to be heard, contrary to Plaintiffs' constitutional right to procedural due process.

78. Therefore, Defendants' termination of Plaintiff's SEVIS status is arbitrary and capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction. 5 U.S.C.A. § 706(2). It is also not in accordance with DHS's own rules.

**COUNT 5**
**Violation of Administrative Procedure Act and Accardi Doctrine**
*(Policy and/or Pattern-and-Practice of F-1 Student Status Terminations)*

79. The foregoing allegations are realleged and incorporated herein.

80. Defendants have adopted a policy, or have engaged in a pattern-and-practice, of unilaterally terminating students' F-1 student status for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

81. Beginning on or around April 4, 2025, Defendants unilaterally terminated the F-1 student status of multiple students nationwide en masse, including Plaintiff.

82.     Defendants did not affirmatively notify the affected students or their schools. Instead, school DSOs learned, via SEVIS, that Defendants had terminated certain students' F-1 student statuses. In SEVIS, Defendants recorded the same boilerplate reason in all cases: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Defendants deliberately did not clarify whether the affected students had been identified in a criminal records check, whether their F-1 visa had been revoked, or both—willfully denying students notice of the grounds for the terminations.

83.     This policy and/or pattern-and-practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the Accardi doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

**COUNT 6**
**Violation of Administrative Procedure Act and Accardi Doctrine**
*(Policy and/or Pattern-and-Practice of F-1 Student Status Terminations)*

84. The foregoing allegations are realleged and incorporated herein.

85. Defendants have adopted a policy, or have engaged in a pattern-and-practice, of unilaterally terminating students' F-1 student status for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

86. Beginning on or around April 4, 2025, Defendants unilaterally terminated the F-1 student status of multiple students nationwide en masse, including Plaintiff.

87.     Defendants did not affirmatively notify the affected students or their schools. Instead, school DSOs learned, via SEVIS, that Defendants had terminated certain students' F-1 student statuses. In SEVIS, Defendants recorded the same boilerplate reason in all cases:

19

"Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Defendants deliberately did not clarify whether the affected students had been identified in a criminal records check, whether their F-1 visa had been revoked, or both—willfully denying students notice of the grounds for the terminations.

88.    This policy and/or pattern-and-practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the Accardi doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

## COUNT 7
### Violation of Administrative Procedure Act and Accardi Doctrine
*(Policy and/or Pattern-and-Practice of SEVIS Terminations)*

89.    The foregoing allegations are realleged and incorporated herein.

90.    Defendants have adopted a policy, or have engaged in a pattern-and-practice, of unilaterally terminating students' SEVIS status and thereby depriving them of the benefit of the F-1 student status for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

91.    Beginning on or around April 4, 2025, Defendants unilaterally terminated the SEVIS status of multiple students nationwide en masse, including Plaintiff.

92.    Defendants did not affirmatively notify the affected students or their schools. Instead, in SEVIS, Defendants recorded the same boilerplate reason in all cases: "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." Defendants deliberately did not clarify whether the affected students had been identified in a criminal records check, whether their F-1 visa had been revoked, and whether or

not their F-1 status was terminated - willfully denying students notice of the grounds for the terminations.

93.     This policy and/or pattern-and-practice constitutes a final agency action and violates the Administrative Procedure Act (APA) and should be set aside pursuant to 5 U.S.C. § 706(2) as arbitrary, capricious, an abuse of discretion, contrary to constitutional right, contrary to law, and in excess of statutory jurisdiction, and a violation of the Accardi doctrine and federal agencies' own rules, *see Accardi v. Shaughnessy*, 347 U.S. 260 (1954).

**COUNT 8**
**Violation of Fifth Amendment – Procedural Due Process**
***(Unlawful Detention)***

94.     The foregoing allegations are realleged and incorporated herein.

95.     The Fifth Amendment requires fair, pre-deprivation process when a person's liberty hangs in the balance.

96.      In light of the unlawful termination of Plaintiff's F-1 student status and the termination of Plaintiff's SEVIS record, Plaintiff is at risk of abrupt arrest and detention by Immigration & Custom's Enforcement ("ICE") without prior notice, and without a mechanism by which he can discern his legal status.

97.     Plaintiff has ensured that he has complied with all rules for the F-1 program and have, by all accounts, fully participated in his course of study, positively contributing to the Marshall and Huntington communities. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (finding immigration detention must further twin goals of (1) ensuring noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument for the need to detain Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Assume jurisdiction over this matter;

2. Enter judgment in favor of Plaintiff and against Defendants;

3. Declare that Defendants' termination of Plaintiff's F-1 student status in SEVIS without affording him sufficient notice and opportunity to be heard violated Plaintiff's Fifth Amendment procedural due process rights;

4. Declare that Defendants' termination of Plaintiff's F-1 student status violated Plaintiff's Fifth Amendment procedural due process rights or, in the alternative, declare that Plaintiff's F-1 student status has not been terminated;

5. Declare that Defendants' termination of Plaintiff's F-1 student status violated the Administrative Procedure Act;

6. Declare that Defendants' termination of Plaintiff's SEVIS status violated the Administrative Procedure Act;

7. Declare that Defendants have adopted a policy, or have engaged in a pattern or practice, of unlawfully terminating students' F-1 student statuses, and that this policy and/or pattern-and-practice violates the APA;

8. Issue a temporary restraining order, followed by a preliminary and permanent injunction as to Defendants:
   a. Requiring them to restore Plaintiff's valid F-1 student status to the extent that such status has been terminated;
   b. Requiring them to restore Plaintiff's valid, active F-1 status in their SEVIS record;
   c. Requiring them to process Plaintiff's request for OPT and process and award his Employment Authorization Document as would have occurred if Defendants had not engaged in the above-described unlawful action;
   d. Prohibiting them from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this Court's jurisdiction;
   e. Prohibiting them from initiating removal proceedings against or deporting any Plaintiff on the basis of the termination of their F-1 student status; 8)
   f. Vacate and set aside Defendants' policy and/or pattern-and-practice of unilaterally terminating students' F-1 student status in SEVIS for reasons that do not rise to the level required for termination under 8 C.F.R. § 214.1.

9.  Award Plaintiff attorney fees and other litigation costs pursuant to the Equal Access to Justice Act and/or any other applicable law; and

10. Grant such further relief as the Court deems just and proper.


/s/ Aubrey Sparks
Aubrey Sparks (WV Bar # 13469)
American Civil Liberties Union of West Virginia
PO Box 3952 Charleston, WV 25339-3952
Phone: (304) 202-3435
asparks@acluwv.org
*Counsel for Plaintiff*