## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

SHIVAL NILESH VYAS,

        Plaintiff,

v.                             CIVIL ACTION NO. 3:25-0261

KRISTI NOEM,
in her official capacity as Secretary of the
U.S. Department of Homeland Security;
TODD LYONS,
in his official capacity as Acting Director of
U.S. Customs and Immigration Enforcement; and
PAMELA BONDI,
in her official capacity as Attorney General
of the United States,

        Defendants.

### MEMORANDUM OPINION & ORDER

On April 18, 2025, Plaintiff Shival Vyas brought suit against Kristi Noem, the Secretary of the Department of Homeland Security (DHS), Todd Lyons, the Acting Director of Immigration and Customs Enforcement (ICE), and Pamela Bondi, the Attorney General of the United States, alleging that Defendants violated his due process rights under the Fifth Amendment and the Administrative Procedure Act (APA), 5 U.S.C. § 701, when they terminated his record in the Student and Exchange Visitor Information System (SEVIS) and his F-1 student status. Compl., ECF No. 1. Soon after, he moved for a temporary restraining order, followed by a preliminary injunction, "to protect the status quo and ensure that Plaintiff is able to complete his degree and pursue OPT as he would have had the government not acted unlawfully and unconstitutionally in disrupting his education." Pl.'s Mem., ECF No. 5, at 13.

The Court granted the TRO on April 23, 2025 and extended it until 5:00 p.m. on May 8, 2025. The Court held a preliminary injunction hearing on May 8, 2025. Defendants submitted declarations by Andre Watson, a senior ICE official who oversees Student and Exchange Visitor Program (SEVP) functions. Watson Decl. I, ECF No. 25-1, ¶ 2; Watson Decl. II, ECF No. 29-1, ¶ 2. For the reasons that follow, the Court **GRANTS** the preliminary injunction.

## BACKGROUND

### I.     The F-1 Student Visa Program, F-1 Student Status, and SEVIS

Foreign students who enter the United States to pursue a full course of study at an approved academic institution are classified as F-1 nonimmigrants. 8 U.S.C. § 1101(a)(15)(F)(i); 8 C.F.R. § 214.1(a)(2). ICE, an arm of DHS, oversees foreign students through its Student and Exchange Visitor Program (SEVP). Watson Decl. I ¶ 3, 4; 8 C.F.R. § 214.2. To enroll an F-1 nonimmigrant student, a school must be certified by SEVP. 8 C.F.R. §§ 214.2, 214.3. SEVP administers the Student and Exchange Visitor Information System (SEVIS), an online database which is also used by the State Department. *See* 8 U.S.C. § 1372(a)(1); 6 U.S.C. § 252(a)(4); Watson Decl. I ¶ 3. According to the State Department's Foreign Affairs Manual (FAM), SEVIS is designed "to monitor the academic progress, movement, etc. of foreign students . . . from entry into the United States to departure." 9 FAM 402.5-4(A).[1] Once a student is admitted to the United States, "the

---

[1] The State Department "articulates official guidance, including procedures and policies, on matters relating to Department management and personnel in the Foreign Affairs Manual (FAM) and the Foreign Affairs Handbook (FAH) series." 22 C.F.R. § 5.5. The Department's website describes the Foreign Affairs Manual as "a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies." Foreign Affairs Manual and Handbook, U.S. Dep't of State, https://perma.cc/7S66-F7FQ. The FAM "lack[s] the force of law," but "the court may rely on the Manual as one persuasive tool in reading the relevant statutes and regulations and in ascertaining the function of" relevant government actions. *Rajabi v. Rubio*, No. 7:24-CV-494, 2025 WL 1266961, at *2 n.3 (W.D. Va. May 1, 2025) (citing *Scales v. I.N.S.*, 232 F.3d 1159, 1166 (9th Cir. 2000)).

SEVIS record is the definitive record of student or exchange visitor status and visa eligibility." 9 FAM 402.5-4(B).

After a foreign student is accepted into a SEVP-approved university, the designated school official (DSO) at that school issues a Form I-20, or Certificate of Eligibility for Nonimmigrant Student Status, in SEVIS. *See* 8 C.F.R. § 214.2; Your Guide to Studying in the States: F-1 Postsecondary, *Study in the States*, https://perma.cc/7W7W-WKHU. The student must apply for an F-1 visa at an embassy or consulate. *Id.*; 22 C.F.R. § 42.71(a). Although DHS oversees much of the regulatory regime for international students and the schools that host them, only the State Department has the authority to issue and revoke visas. *See* 22 C.F.R. §§ 42.71(a), 42.82. A visa is a travel document and "does not guarantee entry into the United States." *Student Visa*, U.S. Dep't of State, https://perma.cc/ABT5-U2TV. "A visa only allows a foreign citizen to travel to a U.S. port-of-entry (generally an airport) and request permission to enter the United States." *Id.* Upon arrival at a port of entry, U.S. Customs and Border Protection (CBP), a DHS entity, reviews the foreign student's Form I-20, visa, passport, and other information in order to determine whether the student should be admitted to the United States. *See* 8 C.F.R. § 214.2; Your Guide to Studying in the States: F-1 Postsecondary, *Study in the States*, https://perma.cc/7W7W-WKHU. A student with an F-1 visa does not have F-1 *status* until CBP makes this determination in favor of admission.

An F-1 student is admitted for the duration of status, which is defined as the time during which the student is pursuing a full course of study or engaging in authorized practical training following completion of studies. 8 C.F.R. § 214.2(5)(i). F-1 students apply to U.S. Citizenship and Immigration Services (USCIS), another DHS entity, for authorization to work in the field of study for up to one year, or three years for STEM students, after graduation pursuant to the optional practical training (OPT) program. 8 C.F.R. § 214.2(f)(10)(ii).

To maintain F-1 status, the student must maintain compliance with various restrictions. *See* 8 C.F.R. §§ 214.1(e) (employment), 214.1(g) (violent criminal activity), 214.2(f)(5) (academic progress); *see also* § 214.1(d) (providing that a non-citizen's nonimmigrant status may be terminated by the revocation of a waiver previously granted under 8 U.S.C. § 1182(d)(3) or (4), the introduction in Congress of a private bill to confer permanent resident status, or the publication of a notice in the Federal Register identifying security, diplomatic, or public safety reasons for termination). Schools must update SEVIS when a student's information changes, including when a student fails to maintain F-1 status. 8 C.F.R. § 214.3(g)(2). An F-1 student who fails to maintain status must leave immediately or seek reinstatement and is not given a grace period to prepare for departure. 8 C.F.R. § 214.2(f)(5)(iv); *see also* ECF No. 26-1.

"A student can lose their F-1 status by either: (1) failing to meet the regulatory requirements for maintaining status; or (2) termination of status by DHS." *Arizona Student Doe #1 v. Trump*, No. CV-25-00174, 2025 WL 1192826, at *2 (D. Ariz. Apr. 24, 2025); *see also* Def.'s Resp., ECF No. 25, at 4, 9. "DHS's ability to terminate an F-1 student's status is limited to the three ways enumerated in § 214.1(d)." *Doe v. Noem*, No. 2:25-CV-00633, 2025 WL 1141279, at *2 (W.D. Wash. Apr. 17, 2025) (citing *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n.100 (3d Cir. 2019)). Under the regulations, a visa revocation has not been a basis for terminating a student's F-1 status or SEVIS record. *See* 8 C.F.R. § 214.1; ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), https://perma.cc/ZM2S-R6Z6. After this Court issued its TRO, Defendants promulgated a new policy regarding SEVIS records and visa revocations. *See* ECF No. 17-1.

II.    **Plaintiff Shival Vyas**

Plaintiff Shival Vyas is a Marshall University student who is scheduled to graduate with a master's degree in data science on May 10, 2025. Pl.'s Decl., ECF No. 4-2, ¶¶ 1-3. A citizen of India, Vyas received an F-1 student visa to pursue his education in West Virginia. *Id.* ¶ 1, 4. When he applied for this visa, he disclosed that he had a previous misdemeanor conviction in the United States and, as a result, was subjected to additional scrutiny in his application. *Id.* ¶ 5-7. There has been no allegation that he hid his misdemeanor conviction when he applied for his F-1 visa and F-1 student status. He disclosed the conviction, and it was considered before he was granted permission to study in the United States. Since he entered the country in 2023, he has not been arrested, charged with a crime, or even issued a speeding ticket. *Id.* ¶ 8.

Despite this, on April 8, 2025, Vyas received an email from the U.S. Consulate General in India informing him that his visa had been revoked based on "additional information [that] became available after [his] visa was issued." Pl.'s Decl. ¶ 9. The message noted the "gravity of this situation" and advised that he could be deported without warning:

> We are writing about an important and serious matter in reference to your nonimmigrant student (F-1) visa.
>
> On behalf of the United States Department of State, the Bureau of Consular Affairs Visa Office hereby informs you that additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 16-Jul-28 was revoked in accordance with Section 221(i) of the United States Immigration and Nationality Act, as amended.
>
> The Bureau of Consular Affairs Visa Office has alerted the Department of Homeland Security's Immigration and Customs Enforcement, which manages the Student Exchange Visitor Program and is responsible for removal proceedings. They may notify your designated school official about the revocation of your F-1 visa.
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin

Given the gravity of this situation, individuals whose visa was revoked may wish to demonstrate their intent to depart the United States using the CBP Home App at https://www.cbp.gov/about/mobile-apps-directory/cbphome As soon as you depart the United States, you must personally present your passport to the U.S. embassy or consulate which issued your visa so your visa can be physically cancelled.

You must not attempt to use your visa as it has been revoked. If you intend to travel to the United States in the future, you must apply for another U.S. visa and a determination on your eligibility for a visa will be made at that time.

Compl. ¶ 23.

Vyas immediately contacted Marshall University's designated school official, who told Vyas that his SEVIS record was not yet terminated. Compl. ¶ 24. But that soon changed. On April 9, 2025, a director in Marshall University's Office of International Student Services emailed Vyas "that [his] record was marked as terminated yesterday for the following reason: OTHER - Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." ECF No. 4-3; Pl.'s Decl. ¶ 11. The email continued:

I understand that this news is incredibly distressing, and I want to assure you that we are here to support you through this process. At this time, I want to make sure you are fully aware of the next steps and your available options.

Please note that all employment authorization, on- or off-campus ends immediately when you fall out of valid status, and that unauthorized employment can further damage your status, so please cease any employment immediately.

You are now out of status and may be subject to immigration enforcement and deportation if you do not promptly depart the US.

Your SEVIS termination does not impact your academic standing at Marshall University. However, your ability to stay enrolled or attend in-person classes may be affected and you may be subject to further immigration enforcement actions by federal authorities. Given the seriousness of this situation, I strongly urge you to consult a qualified immigration attorney regarding your situation. Marshall University cannot provide legal guidance on these matters and you should consult a qualified immigration attorney if you have any questions.

I know this is overwhelming, and while my ability to provide legal guidance is limited in these circumstances, please know that we are here to support you. If you have received any notifications from the U.S. government, embassy, or consulate, I would greatly appreciate it if you could share them with me.

Compl. ¶ 24. Vyas was not allowed to attend in-person classes. Pl.'s Decl. ¶ 12. Additionally, he could no longer apply for jobs pursuant to the OPT program, for which he had previously applied. *Id.* He feared detention and deportation. Pl.'s Mem. at 1.

### III.    New ICE Policies and "Student Criminal Alien Initiative"

Plaintiff provided a copy of a SEVP policy promulgated on April 26, 2025 regarding termination of SEVIS records. ECF No. 17-1. Defendants did not acknowledge this policy in their briefing. *See* Def.'s Resp. But the Court takes judicial notice of the fact that Defendants have filed this policy in similar cases before the federal district courts. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that the most frequent use of judicial notice is in noticing the content of court records). The Court has reviewed the record of a similar case in the U.S. District Court for the Western District of Virginia, *Doe v. Noem*, Case No. 3:25-cv-00023, in which Defendants submitted this policy and the transcript of an April 29, 2025 hearing in yet another similar case in the U.S. District Court for the District of Columbia, *Patel v. Lyons*, Case No. 1:25-cv-01096. Plaintiff also submitted a copy of that hearing transcript in this action. *See* ECF No. 26-3. In that hearing, Andre Watson, Defendants' declarant in this case, answered questions about new DHS policies and testified to an administrative record.

Watson explained that DHS launched a new initiative, called the Student Criminal Alien Initiative, to run the names of the nearly 1.3 million nonimmigrant students studying in the United States through the National Crime Information Center (NCIC) database. Hr'g Tr. at 3-9, *Patel* (No. 1:25-cv-01096). As part of this initiative, Watson explained, DHS staff compiled lists of students with arrest or other criminal records and sent batches of that information to the State Department, which resulted in visa revocations for over 3,000 students. *Id.* at 10-15. DHS terminated SEVIS records for those students. *Id.* at 15-16.

Watson's first declaration in this case states that based on Plaintiff's 2020 misdemeanor conviction, "on April 8, 2025, SEVP amended VYAS's SEVIS record to reflect this information by setting the record designation to 'terminated.'" Watson Decl. I ¶ 8. "On April 16, 2025, [DHS] received communications from the Department of State, indicating that VYAS's visa had been revoked." *Id.* ¶ 9. The declaration states that Plaintiff's SEVIS record is currently active (after the TRO required it) but does not affirm or deny that he is lawfully present in the United States:

> Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated VYAS's nonimmigrant status.

Watson Decl. I ¶ 10-11.

The SEVP policy promulgated on April 26, 2025 provides that the Department of State may revoke a visa at any time according to its discretion and, when it does so with immediate effect, the visa revocation is grounds for ICE to initiate removal proceedings:

> Pursuant to INA § 221(i), the U.S. Department of State (State) may at any time, in its discretion, revoke an alien's visa. State can consider derogatory information provided by ICE and other U.S. law enforcement agencies in its assessment of whether visa revocation is appropriate for an alien. When State revokes an alien's visa with immediate effect, ICE should take steps to initiate removal proceedings.
> If State revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B). SEVP should not, however, terminate a nonimmigrant's SEVIS record on this basis until it has confirmed that State has revoked the visa.

ECF No. 17-1. There are different types of visa revocations, including a prudential revocation. *See* 9 FAM 403.11-5(B). Defendants claim that, unlike an immediate revocation, "a prudential revocation, absent other factors, does not have a corresponding ground of removability." Def.'s Resp. at 3.

Defendants claim in their brief that Plaintiff's visa was revoked prudentially and not with immediate effect. *Id.* at 3-4. They provide no evidence for this claim and cite to Plaintiff's Complaint. *Id.* The plain language of the visa revocation notice in Plaintiff's Complaint suggests that the visa revocation occurred with immediate effect: It states that the visa was revoked, warns that remaining in the United States without lawful status has serious consequences including deportation without warning to Plaintiff's home or another country, notes "the gravity of this situation," and explains how Plaintiff can indicate his intent to leave the country. Compl. ¶ 23.

At the hearing, Defendants submitted a second declaration by Watson. The declaration is generic and does not mention Vyas by name. It provides in pertinent part:

> 4. Beginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases.
> 5. ICE has re-activated SEVIS records for plaintiff(s) who met the parameters above.
> 6. ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination.
> 7. ICE's reactivation of the plaintiff(s) SEVIS record is being made retroactive to the date of its initial termination such that there is no gap in the plaintiff(s)' SEVIS record.

Watson Decl. II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 65 authorizes federal courts to issue preliminary injunctions. Such injunctions are "extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir.1991) (internal quotation marks omitted). The movant bears the burden to establish that (1) he is likely to succeed on the merits of his case; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of the equities tips in his favor; and (4) an injunction would be in the public interest. *Winter v. Nat. Res.*

*Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Frazier v. Prince George's County*, 86 F.4th 537, 543

(4th Cir. 2023). When a plaintiff seeks relief against the government, the final two factors merge.

*Roe v. Dep't of Def.*, 947 F.3d 207, 230 (4th Cir. 2020), *as amended* (Jan. 14, 2020) (citing *Nken*

*v. Holder*, 556 U.S. 418, 435 (2009)).

## DISCUSSION

### I.    Likelihood of Success on the Merits

Plaintiff's claims that Defendants violated the APA when they terminated Plaintiff's F-1

student status and SEVIS status are likely to succeed on the merits. Thus, the Court does not

address Plaintiff's other claims at this stage.

### a.    Standing

To satisfy the case or controversy requirement of Article III, a plaintiff must demonstrate

that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant,

and that the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560-561 (1992). Essentially, Defendants argue that Plaintiff did not suffer an injury

because no harm flows from the termination of the SEVIS record and ICE did not terminate

Plaintiff's F-1 nonimmigrant status. They argue that ICE termination of his status would require

one of the circumstances listed in 8 C.F.R. § 214.1(d), which have not happened here. Def.'s Resp.

at 9. They further argue that Marshall University cannot determine that he is "out of status" because

only USCIS or an immigration judge can do so. *Id.* at 10.

But as Plaintiff explains, Defendants' argument "overlooks that termination of the SEVIS

record either formally or functionally unlawfully terminated Plaintiff's F-1 nonimmigrant status."

Pl.'s Reply, ECF No. 26, at 4. According to the State Department, "the SEVIS record is *the*

*definitive record* of student or exchange visitor status and visa eligibility." 9 FAM 402.5-4(B)

(emphasis added). A DHS website explains that when a student's F-1 SEVIS record is terminated, the student loses all employment authorization and ICE agents "may investigate to confirm the departure of the student." *SEVIS Help Hub: Terminate a Student*, Study in the States, https://perma.cc/B4E6-9YNV. Another DHS resource states that "[w]hen terminated by a DSO or SEVP, students must leave the United States, file for reinstatement or take other action to remain in status." ECF No. 26-1 (SEVP resource updated in 2017).

Like plaintiffs in similar cases, Vyas received an email warning him that remaining in the United States "without a lawful immigration status can result in fines, detention, and/or deportation." Compl. ¶ 23. Yet, Defendants argue "Plaintiff's assertions that his F-1 nonimmigrant status has been terminated is based upon a faulty premise and a misunderstanding of U.S. immigration laws and procedures." Def.'s Resp. at 2. This argument does not square with the facts before the Court. As a district court observed in a similar case: "If neither a prudential visa revocation nor a SEVIS record termination causes a F-1 student to lose their F-1 status, as the Government suggests, it is a mystery why the Government would inform Plaintiff of the consequences of remaining in the United States *without lawful immigration status*." *Arizona Student Doe #1*, 2025 WL 1192826, at *5.

Similarly, the idea that the SEVIS record has no bearing on whether students can maintain status, and make academic progress, is at odds with the regulations. SEVP-approved schools must report certain events in SEVIS in order to maintain compliance. *See* 8 C.F.R. §§ 214.2(f)(1)(iii), 214.3(g)(2). Schools must maintain compliance with these recordkeeping and reporting requirements in order to be recertified to host international students. 8 C.F.R. § 214.2(h)(iii). Plaintiff emphasizes that Defendants' version of the facts places SEVP-approved schools such as Marshall University in "an impossible position": "If the termination of a SEVIS record does not,

in fact, terminate F-1 student status and Defendants are permitted to terminate SEVIS records at will, they create a situation where schools are required by law to update SEVIS for students legally present within the United States, but are unable to do so because of the termination of the student's SEVIS record." Pl.'s Reply, ECF No. 26, at 3. If a student cannot attend classes, the student may fail to meet the regulatory requirements for maintaining status.

This "impossible situation" exposes the fatal flaw in Defendants' argument: Defendants argue that Plaintiff is wrong to conflate the termination of the SEVIS record with termination of F-1 status, but "the Government itself appears to conflate the two actions and treat Plaintiff as if [he] has in fact failed to maintain status." *Arizona Student Doe #1*, 2025 WL 1192826, at *6. Federal agencies have treated SEVIS as "the definitive record" of F-1 status. 9 FAM 402.5-4(B). "As other courts facing this issue in recent days have found, it is likely that the termination of a student's SEVIS record 'effectively terminat[es] [that student]'s F-1 status.'" *Id.* (quoting *Doe v. Noem*, No. 2:25-CV-01103, 2025 WL 1134977, at *5 (E.D. Cal. Apr. 17, 2025)).

Defendants' brief acknowledges that ICE does not have the authority to terminate F-1 status absent the circumstances listed in 8 C.F.R. § 214.1(d). Def.'s Resp. at 9. Watson's declaration states: "The statute and regulations do not provide SEVP the authority to terminate nonimmigrant status by terminating a SEVIS record." Watson Decl. I ¶ 11. Watson also claims that ICE has inherent authority under 8 U.S.C. § 1372 "to terminate SEVIS records, as needed, to carry out the purposes of the program." *Id.* ¶ 4; *see* 8 U.S.C. § 1372 (directing the executive branch to "develop and conduct a program to collect from approved institutions of higher education" information about foreign students and "establish an electronic means to monitor and verify" information about those students). But the purpose of the program is to track accurate information about foreign students. *See id.* If Defendants have not terminated Plaintiff's F-1 status, it is a

mystery why they terminated "the definitive record" of his status. Defendants have not offered another explanation. Accordingly, at this stage, Plaintiff has made a clear showing that Defendants effectively terminated his F-1 status when they terminated his SEVIS record.

Defendants submitted a second Watson declaration at the preliminary injunction hearing and suggested this case was moot because "ICE has re-activated SEVIS records for plaintiff(s)" whose records were terminated beginning in March 2025 "due to information provided by U.S. Department of State and criminal databases." Watson Decl. II ¶ 4-5. The second Watson declaration states: "ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination." *Id.* ¶ 6. Defendants cannot moot this case with a declaration that there are currently "no plans" to terminate Plaintiff's SEVIS record based on his misdemeanor conviction.

"A defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 174 (2000). Defendants "bear[] the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017) (quoting *Laidlaw*, 528 U.S. at 190). "[A] defendant fails to meet its heavy burden to establish that its allegedly wrongful behavior will not recur when the defendant 'retains the authority and capacity to repeat an alleged harm.'" *Porter*, 852 F.3d at 364 (quoting *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014)).

The second declaration is vague and generic. It does not refer to Plaintiff by name. It does not promise that Defendants will not return to their prior policy. It is not clear that Watson's statement that Plaintiff's SEVIS record will not be terminated again "based solely on the NCIC record that led to its initial termination" means that the record will not be terminated again based

-13-

on Plaintiff's visa revocation for the same reason. On the face of the new SEVP policy, it appears that ICE asserts the right to terminate a SEVIS record based on a "visa revocation with immediate effect" regardless of the reason for the visa revocation. ECF No. 17-1. Defendants have not mooted this case.

### b. Sovereign Immunity

Defendants argue that this Court cannot entertain a challenge to Defendants' termination of the SEVIS record because the Privacy Act of 1974 provides exclusive relief to challenge agency recordkeeping and therefore the APA's waiver of sovereign immunity does not extend to this claim. Def.'s Resp. at 12-19. The Privacy Act provides:

> Whenever an agency . . . fails to maintain any record concerning any individual with such accuracy . . . as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual . . . the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 § 552a(g)(1)(C). The APA's waiver of sovereign immunity "does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702).

Defendants' argument is meritless. As an initial matter, Plaintiff cannot sue under the Privacy Act because it applies to recordkeeping about an "individual," defined as a U.S. citizen or permanent resident. 5 U.S.C. § 552a. Plaintiff is neither and cannot sue under the Privacy Act. Defendants acknowledge this. Def.'s Resp. at 17. More importantly, Defendants ignore relevant precedent to argue that "[i]t is well-settled that the Privacy Act is a comprehensive statutory scheme that precludes other avenues of relief" such as APA review. Def.'s Resp. at 15-17. The Supreme Court recently held that the Privacy Act and other laws "can coexist harmoniously," the

-14-

Privacy Act and the other statute at issue in the case were "complementary," and a party faces a "heavy burden" in showing that the Privacy Act displaces another statute. *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42-44, 63 (2024). This decision "suggests that the Privacy Act is not the kind of comprehensive and 'exclusive' remedial statute that impliedly displaces related remedies under other statutes." *All. for Retired Americans v. Bessent*, No. CV 25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025) (rejecting the claim that the Privacy Act displaces APA review of alleged mishandling of records).

Here, even if Plaintiff could seek relief under the Privacy Act, it is not an appropriate avenue for the relief sought because it "does not allow a court to alter records that accurately reflect an administrative decision, or the opinions behind that administrative decision." *Reinbold v. Evers*, 187 F.3d 348, 361 (4th Cir. 1999). In his declaration and the *Patel* hearing colloquy, Watson detailed the deliberative process that resulted in the termination of Plaintiff's SEVIS record. Plaintiff challenges the result of this deliberative process, not merely inaccurate information in a record. *Kirtz*, 601 U.S. at 63 (citing 5 U.S.C. §§ 552a(g)). There is no adequate remedy for Plaintiff under the Privacy Act. *See* 5 U.S.C. § 704.

### c. Final Agency Action

Defendants also argue that Plaintiff cannot seek APA review because there was no final agency action. Def.'s Resp. at 19. Agency action is subject to judicial review under the APA if it is either "made reviewable by statute" or "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. To constitute "final" agency action, the action must: (1) mark the consummation of the agency's decisionmaking process (i.e., the action must not be of a merely tentative or interlocutory nature); and (2) must be one by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-78

(1997). As to the first requirement, Defendants' brief characterizes the SEVIS record termination as "temporary," without further explanation. Def.'s Resp. at 20. This characterization is contrary to the evidence before the Court. In his declaration and the *Patel* hearing colloquy, Watson testified to an administrative record that documented a deliberative, if flawed, process. There is no evidence that this termination was temporary or that, without this Court's TRO, it would have been restored to "active" status. As the Court discussed in the context of standing, legal consequences flow from the termination of the SEVIS record.

### d. APA Violation

Pursuant to the APA, reviewing courts shall set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The same is true for an agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

Plaintiff alleges Defendants violated the APA in several ways. At this stage, the Court focuses on the arguments that Defendants failed to comply with their own regulations and exceeded statutory authority when they terminated Plaintiff's SEVIS record. Government agencies are generally required to follow their own regulations. *See United States v. Morgan*, 193 F.3d 252, 267 (4th Cir. 1999) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)); *see also Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."). Here, as Defendants acknowledge in their brief, the regulations provide that F-1 status shall terminate in the three circumstances listed in 8 C.F.R. § 214.1(d) or when a student fails to comply with statutory or regulatory conditions of status. Def.'s Resp. at 22. There is no allegation that Plaintiff's criminal conviction, which occurred before he obtained the F-1 status that allowed him to attend Marshall University,

constituted a failure to comply with statutory or regulatory conditions of status. The regulations do not provide a basis for Defendants to terminate Plaintiff's status. Defendants claim that Plaintiff's visa revocation did not have immediate effect, meaning that the visa revocation was not grounds for termination of the SEVIS record or student status under the April 26, 2025 SEVP policy. *See* Def.'s Resp. at 3-4; ECF No. 17-1.

Nonetheless, Defendants terminated Plaintiff's SEVIS record, "the definitive record" of student status. As authority for this action, Defendants point to statutory authority under 8 U.S.C. § 1372 to "develop and conduct a program to collect" information regarding nonimmigrant students and exchange visitors and to "establish an electronic means to monitor and verify" certain related information. Watson Decl. I ¶ 4. Defendants argue that inherent in that authority is the authority "to terminate SEVIS records, as needed, to carry out the purposes of the program." *Id.*

To survive judicial review under the arbitrary and capricious standard, the government must "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167 (1962)); *see also West Virginia v. Thompson*, 475 F.3d 204, 212 (4th Cir. 2007). Defendants have failed to offer any explanation for the termination of Plaintiff's SEVIS record. In particular, Defendants have not explained how terminating Plaintiff's SEVIS record carries out the purposes of the SEVIS program, which is to maintain accurate information about foreign students, if Plaintiff's student status has not been terminated.

Defendants' actions likely exceeded statutory and regulatory authority. Several district courts have "resoundingly rejected the government's reliance on § 1372 as a source of authority to terminate a student's record." *Gao v. Noem*, No. 1:25-CV-419, 2025 WL 1318417, at *7 (W.D.

-17-

Mich. May 7, 2025) (collecting cases). "If termination of a SEVIS record is the practical and functional equivalent of termination of a student's F-1 nonimmigrant status, as seems likely at this stage of litigation, then ICE does not have inherent authority to terminate SEVIS records for any reason they choose, as federal regulations limit the means by which ICE can terminate a student's F-1 status." *Arizona Student Doe #1*, 2025 WL 1192826, at *6 (citing 8 C.F.R. § 214.1(d)).

Accordingly, Plaintiff has met his burden under the first factor required for a preliminary injunction.

## II.    Irreparable Harm

To establish irreparable harm, Plaintiff must make a clear showing that he will suffer harm that is "neither remote nor speculative, but actual and imminent," *Direx Israel*, 952 F.2d at 812, and "likely in the absence of an injunction." *Winter*, 555 U.S. at 22. Irreparable harm is harm that "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019) (quoting *Stuller, Inc. v. Steak N Shake Enters.*, 695 F.3d 676, 680 (7th Cir. 2012)).

This Court previously found irreparable harm in the loss of academic progress; Plaintiff's inability to attend in-person classes; his inability to apply for OPT and receive a decision on his OPT application; and his fear of imminent deportation. In similar cases, many district courts have found that the loss of timely academic progress constitutes irreparable harm. *See Doe v. Noem*, 2025 WL 1161386, at *6 (collecting cases). Likewise, "[m]ultiple courts have held that loss of or delay in obtaining employment authorization is an irreparable harm." *Doe v. Noem*, 2025 WL 1141279, at *7 (collecting cases). Additionally, to the extent that Plaintiff's F-1 status has been terminated, "the accrual of unlawful presence time is an irreparable harm because it may subject a

person to lengthy re-entry bars that are not judicially reviewable." *Doe v. Noem*, 2025 WL 1161386, at *6.

Defendants argue that Plaintiff cannot show irreparable harm because he has not shown that he cannot transfer his completed college credits to another academic institution "either in his home country or in another country (e.g., Canada)." Def.'s Resp at 24-25. Plaintiff is mere days from graduation. Defendants' suggestion that Plaintiff can avoid irreparable harm by transferring his credits and completing his degree at a later date at a school in another country, perhaps Canada, is absurd.

The Court's TRO required Defendants process Plaintiff's request for OPT as would have occurred if Defendants had not engaged in the action described in the Complaint. ECF No. 18. On May 7, 2025, Defendants submitted a notice that "Plaintiff's OPT application has been approved, and Plaintiff's OPT Card and approval notice will be sent to him in due course." ECF No. 27. Defendants argued at the hearing that this development should weigh against a finding that Plaintiff faces irreparable harm. However, for a student who completes a course of study and remains in the United States pursuant to the OPT program, the SEVIS record retains significance. *See* 8 C.F.R. § 214.2(f)(12) (reporting requirements for students on OPT). Students must report certain information about their employment to the DSO, who must update the SEVIS record with that information. *Id.*

Plaintiff received an email from a U.S. consulate warning of the risk that he could be deported without warning. Compl. ¶ 24. Despite this, Defendants dismiss Plaintiff's fear of detention and deportation as "based on conjecture, rumor, and media reports of unrelated matters." Def.'s Resp. at 27. Defendants argue, correctly, that the possibility of detention and deportation, without more, cannot constitute irreparable injury under binding precedent. *Nken v. Holder*, 556

-19-

U.S. 418, 435 (2009) ("[T]he burden of removal alone cannot constitute the requisite irreparable injury.").[2] Here, the Court relies on Plaintiff's fear of deportation alongside other injuries, including the loss of timely academic progress. The Court does not rely on "the burden of removal *alone*." *Id.* (emphasis added).

Accordingly, Plaintiff has met his burden under the second factor required for a preliminary injunction.

### III.    Balance of the Equities and Public Interest

Defendants argue these factors weigh against injunctive relief because the public has a strong interest in the enforcement of immigration laws and other "actions taken pursuant to statutes enacted by the duly elected representatives of the people." Def.'s Resp. at 28-29. Here, Defendants have struggled to tether their actions to statutes enacted by elected representatives. The public "undoubtedly has an interest in seeing its governmental institutions follow the law." *Roe v. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020), *as amended* (Jan. 14, 2020).

The balancing exercise cannot end here. *USA Farm Lab., Inc. v. Micone*, No. 23-2108, 2025 WL 586339, at *4 (4th Cir. Feb. 24, 2025) (explaining that courts cannot conflate the likelihood of success on the merits and balance of the equities when reviewing an allegedly unlawful government action). On the other side of this exercise, Vyas stands to suffer significant injuries, as outlined in the Court's discussion of the second factor, despite the absence of any allegation that he violated immigration law. While the public has a strong interest in immigration

---

[2] It is noteworthy that this holding in *Nken* relied on the premise that removed persons "may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal." *Nken*, 556 U.S. at 435. "Recent events, however, highlight the bleak reality that even a person whose removal was without legal justification may not be able to return to the United States once removed." *Doe v. Noem*, 2025 WL 1161386, at *6 n.6 (citing *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112 (4th Cir. Apr. 17, 2025)).

enforcement, the public also has a strong interest in the F-1 student program that Congress created to invite foreign students to study in the United States. Accordingly, Plaintiff has met his burden under the remaining factors required for a preliminary injunction.

## IV.    Bond

Rule 65(c) states a "court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." A "district court retains the discretion to set the bond amount as it sees fit or waive the security requirement" but "must expressly address the issue of security before allowing any waiver[.]" *Pashby v. Delia*, 709 F.3d 307, 332 (4th Cir. 2013), *abrogated on other grounds by Winter*, 555 U.S. 7 (citations omitted).

The Court exercises its discretion to waive the security requirement in this case. Defendants request that the Court require Plaintiff post security. They point the Court to the "Visa Bond Pilot Program," which includes an assessment of the costs of the "Immigration Enforcement Lifecyle" for "an alien who overstays his or her visa and must be removed." Def. Resp. at 31. Here, there is no evidence Vyas has overstayed his visa, and Defendants seem to disclaim that he must be removed. Defendants' analogy to a visa overstay is not helpful. The Court finds that Defendants should not incur significant costs and thus waives the security requirement.

## CONCLUSION

The Court **GRANTS** the motion for a preliminary injunction. The Court **DIRECTS** that Defendants[3]: (a) restore Plaintiff's valid, active F-1 status in the SEVIS record; (b) restore Plaintiff's valid F-1 student status to the extent that such status has been terminated; and (c) process

---

[3] This Order binds Defendants' officers, agents, employees, attorneys, and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B). Fed. R. Civ. P. 65(d)(2).

Plaintiff's request for OPT and, if approved, process and award his Employment Authorization Document as would have occurred if Defendants had not engaged in the action described in the Complaint.

The Court further **DIRECTS** that Defendants are prohibited from arresting, detaining, or transferring Plaintiff out of this Court's jurisdiction, or ordering the arrest, detention, or transfer of Plaintiff out of this Court's jurisdiction, or initiating removal proceedings against or deporting the Plaintiff.

As discussed at the hearing, this Order will not limit Defendants' ability to act upon any failure by Plaintiff to maintain compliance with the statutory and regulatory requirements for his F-1 status. Defendants should move the Court for relief if such circumstances arise.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:     May 8, 2025

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE